IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSEMARY PHINIZY,              )
                               )
        Plaintiff,             )
                               )
    v.                         )    Civil Action No. 06-898
                               )
PHARMACARE,                    )    Judge Cercone
                               )    Magistrate Judge Hay
        Defendant.             )

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that the motion for summary judgment (Docket #19 ) filed on behalf of defendant, Pharmacare, be granted.

II. REPORT

Family and Medical Leave Act of 1993

The twofold purpose of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654 (1999), is to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. § 2601(b)(1), (2). To further these objectives, FMLA instructs that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12- month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." § 2612(a)(1)(D). FMLA leave is also available "to care for the . . . parent of the employee, if . . .[the] parent has a serious health condition." § 2612(a)(1)(C).

Plaintiff Rosemary Phinizy ("Phinizy"), an employee of defendant Pharmacare[1], seeks relief based upon Pharmacare's alleged violations of FMLA. Phinizy asserts that Pharmacare both interfered with her exercise of the rights afforded by the statute in violation of § 2615(a)(1) and terminated her employment in retaliation for availing herself of FMLA-qualified leave in violation of § 2615(a)(2). Pharmacare filed a motion for summary judgment claiming generally that Phinizy's termination was wholly unrelated to her purported FMLA-qualifying absences. Pharmacare contends additionally that Phinizy's interference claim cannot survive summary judgment because she was not entitled to FMLA leave, did not provide notice that she intended to take FMLA leave, and did not suffer harm traceable to denial of FMLA benefits. Pharmacare further argues that plaintiff cannot establish a *prima facie* retaliation case nor demonstrate that Pharmacare's articulated reason for her termination was pretextual.

Summary Judgment Standard

Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating the evidence, the facts are viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in its favor. Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). The parties here join issue over whether certain uncontradicted evidence offered by Pharmacare can be considered in deciding this motion. Phinizy levels numerous objections to deposition and affidavit testimonies from Pharmacare employees, alleging that they are "interested witness[es] and [their] testimon[ies] must be disregarded on a motion for summary judgment, even if unimpeached, since Defendant is the moving party." Plaintiff's Response to Defendant's

---

[1] Pharmacare is a wholly-owned subsidiary of CVS/Caremark Corporation.

Statement of Undisputed Material Facts (Docket # 35).

The question of the treatment of testimony from the moving party's interested witnesses at the summary judgment stage was broached by the United States Supreme Court in <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). In <u>Reeves</u>, the Supreme Court determined that the standard of review for summary judgment mirrored that of review a motion for judgment as a matter of law and, as such, decreed that deciding courts should review all of the evidence in the record. The Court nonetheless instructed that all reasonable inferences must be drawn in favor of the nonmoving party, and that courts may not invade the jury's province by making credibility determinations or weighing the evidence. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Id</u>. at 151. In this context of cautioning against encroachment upon the jury's responsibility, the Court stated that in deciding summary judgment matters, the evidence favoring the nonmovant should be credited, as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, **at least to the extent that that evidence comes from disinterested witnesses**." <u>Id</u>. (emphasis added).

Focusing primarily on this emphasized language and a footnote in <u>Hill v. City of Scranton</u>, 411 F.3d 118 (3d Cir. 2005), Phinizy proposes that the bulk of the evidence offered by Pharmacare, even if uncontradicted, must be disregarded because it originates from interested witnesses. Phinizy, however, overstates the reach of <u>Reeves</u>. In <u>Hill</u>, police officers who were fired for non-compliance with a residency ordinance complained that their termination was in retaliation for filing a prior lawsuit that challenged the constitutionality of the ordinance. Viewing the evidence favorably to the officers, the Court of Appeals for the Third Circuit found

that, in the twenty years since its inception, the residency ordinance had been sporadically enforced, in that the city collected relevant data from its employees on only two occasions. 411 F.3d at 131. In a footnote, the court utilized the Reeves language concerning interested witnesses to discredit evidence from a city employee who testified to a third occasion when residency information was gathered, but could not produce any records to support her claim. Id. at n.22. In a later case, however, the court of appeals articulated that its comment in Hill regarding rejection of interested witnesses' testimony followed its observation that the case involved contradictory evidence. The court explained that "[t]he fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." Lauren W. v. DeFlaminis, 480 F.3d 259, 272 (3d Cir. 2007). See also Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 898 (5th Cir. 2002)(definition of interested witness cannot be so broad to require rejection of company's agents' testimony regarding reasons for discharging employee; to so hold forecloses possibility of summary judgment for employers relying on testimony of agents to explain why disputed action was taken). Therefore, the following historical recital includes undisputed facts elicited from Pharmacare agents where credibility is not implicated.

Factual and Procedural Background

Phinizy was hired by one of defendant's predecessor companies in 1993 as a pharmacy technician and was subject to the company's attendance, leave, and tardiness policies as described in the employee handbook. The employee handbook, which Phinizy admits to receiving, also details employees' rights and obligations concerning FMLA-qualifying leave. FMLA posters were displayed in locations throughout the Pharmacare facility, including the

cafeteria in the building where Phinizy worked.

In 2001, Phinizy made an inquiry concerning FMLA leave to care for her mother and was provided the necessary paperwork by Pharmacare's Human Resources Department. Phinizy ultimately decided not to invoke her FMLA rights because she could not afford to go on unpaid leave. On another occasion, Phinizy questioned the shift supervisor, Beth Neiman ("Neiman") whether FMLA leave was available to have cosmetic surgery. Though Neiman expressed doubt that FMLA would cover absences related to this type of procedure, she referred Phinizy to Human Resource personnel. In 2005, Phinizy again initiated a FMLA leave request to have carpal tunnel surgery. Phinizy was provided the appropriate paperwork, but decided against having the surgery.

In 1999, Phinizy began experiencing recurring bouts of bronchitis, causing her to periodically miss work. In December 2004, Phinizy was absent from work on three consecutive days due to bronchitis.[2] Bronchitis symptoms also caused Phinizy to miss two consecutive days of work in both October and December of 2005. A physician prescribed medication to alleviate Phinizy's symptoms and, when treated, Phinizy's condition improved and she could return to work. In addition to her bronchitis absences, Phinizy missed work on December 6, 2005, to accompany her elderly mother to a hospital emergency room.

Over the years, Phinizy had been formally counseled a number of times for violations of the company's attendance policy, to the extent that on January 5, 2006, she received a "Job in Jeopardy" designation and was advised that any subsequent time and attendance incidents

---

[2] Pharmacare's payroll records identify bronchitis as the reason for Phinizy's absences on December 27 and December 28 only. For purposes of summary judgment, Pharmacare does not dispute that Phinizy's December 29 absence was likewise due to bronchitis.

would result in termination.

On January 26, 2006, Phinizy arrived at the Pharmacare facility to begin her midnight shift and parked her vehicle in an unauthorized location. It is undisputed that snow had accumulated in the employee lot where Phinizy was authorized to park and that the lot had not been plowed. After Phinizy entered the Pharmacare building, she punched a time clock one minute before her shift was scheduled to begin. Minutes after beginning her shift, Phinizy left her work station without punching out, exited the building, and moved her vehicle to the designated employee parking area. Phinizy then re-entered the building, returned to work, and completed her shift.

During the course of the January 26, 2006 workday, Neiman examined surveillance video and time clock records to confirm that Phinizy did not punch out when she left her workstation to move her car. At a meeting later that morning, Neiman discussed Phinizy's activity with members of the senior Pharmacare staff, including Matt Marasco ("Marasco"), Pharmacare's Human Resources Manager and Glenn Foreman ("Foreman"), the daylight shift manager. Marasco, in turn, reviewed Phinizy's personnel file and brought the matter to the attention of David Pritts ("Pritts"), Pharmacare's Human Resource Director. Pritts and Marasco discussed the concerns raised by Phinizy's conduct and agreed that termination of her employment was appropriate. Neiman and Foreman later telephoned Phinizy and informed her that she was being fired for theft of company time occasioned by her decision to leave her workstation to move her vehicle. The following day Marasco sent a letter to Phinizy confirming her termination. The letter informed Phinizy that the events of January 26, 2006 were considered theft of company time, violated the company's attendance guidelines, and constituted

grounds for immediate termination. The letter concluded: "And previously, on January 5, 2006, you were given a Job in Jeopardy counseling for attendance, and advised that the next related time and attendance incident would result in termination of employment. We did acknowledge your refusal to sign the counseling document." Plaintiff's Appendix to Brief in Opposition to Motion for Summary Judgment, Exhibit 14 (Document # 36-4).

On July 7, 2006, Phinizy filed a two count complaint seeking redress for alleged violations of FMLA. Count one purports that Pharmacare interfered with Phinizy's exercise of her FMLA rights by failing to fully inform her of the opportunity to qualify for FMLA leave and the attendant obligations necessary to request statutory leave. Phinizy also claims that Pharmacare illegally considered FMLA-qualified leave as a negative factor in certain employment actions taken against her, including Pharmacare's decision to fire her.[3] In count two, Phinizy asserts that her termination constituted a prohibited retaliation for exercise of her FMLA rights. After discovery closed, Pharmacare filed the instant summary judgment motion.

Interference Claim

In order to assert a claim of interference, Phinizy must show that she was entitled to benefits under FMLA and that Pharmacare illegitimately prevented her from obtaining those benefits. Callison, 430 F.3d at 119. Pharmacare asserts that Phinizy's interference claim is ripe

---

[3] Although Phinizy includes the allegation that Pharmacare improperly utilized FMLA-qualifying leave as a negative factor in its employment actions against her as part of her interference count, negative factor charges are properly characterized as retaliation claims and will be analyzed in that context. Conoshenti v. Public Service Electric and Gas Co., 364 F.3d 135, 147, n.9 (3d Cir. 2004). See also Callison, 430 F.3d at 119 (FMLA protects against discrimination by prohibiting employers from considering FMLA leave "as a negative factor in employment actions." (quoting 29 C.F.R. § 825.220(c)).

for summary judgment because she cannot demonstrate that she was entitled to FMLA leave and because she failed to provide sufficient notice that she required FMLA leave. Pharmacare further argues that Phinizy's interference cause of action is defeated because she is unable to identify any harm suffered by virtue of Pharmacare's failure to designate certain of her work absences as FMLA-qualifying leave.

As noted, section § 2612(a)(1)(D) of FMLA allows for leave if the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." "Serious health condition" is defined under the regulations promulgated pursuant to FMLA as "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care ... or ... continuing treatment by a health care provider." 29 C.F.R. § 825.114(a)(1), (2). An employee may meet the continuing care requirement by showing (1) a period of incapacity of more than three consecutive calendar days that also involves treatment two or more times by a health care provider; (2) incapacity due to pregnancy or prenatal care; or, (3) any period of incapacity or treatment for such incapacity due to a chronic serious health condition. 29 C.F.R. § 825.114(a)(i-iii). The legislative history of FMLA reveals that "the term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the ambit of most employer sick leave policies." S.Rep. No. 103-3 at 30(1993), *reprinted in* 1993 U.S.C.C.A.N. 3, at pp. 30-31.[4]

---

[4] Some courts have found that "absent extraordinary circumstances," bronchitis and similar conditions do not qualify as a serious health conditions under FMLA. Schaub v. Fulton Precision Industries, No.1CV-03-0980, 2005 WL 1154421, at *4 (M.D.Pa. May 4, 2005). See Beal v. Rubbermaid Commercial Products, Inc., 972 F.Supp. 1216, 1225 (S.D. Iowa 1997) (employee's episode of bronchitis not FMLA serious health condition);

Phinizy never missed more than three consecutive days of work for bronchitis; thus, she can only demonstrate entitlement to FMLA leave for her illness if it fits the definition of a chronic serious health condition. A chronic serious health condition is defined as one which "requires periodic visits for treatment by a health care provider . . . [c]ontinues over an extended period of time (including recurring episodes of a single underlying condition); and [m]ay cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.114 (a)(iii).

Viewing the relevant facts favorably to Phinizy, she has suffered from bronchitis since 1999. Her bouts can occur several times a year and last for three or four months. Phinizy treats her bronchitis with antibiotics and steroids prescribed to her by a physician. When treated, Phinizy's symptoms improve and she can attend work. In 2004, Phinizy was absent from work from December 27 through December 29 due to bronchitis. On December 28, 2004, she sought treatment from her primary care physician for this ailment. In 2005 Phinizy missed two consecutive days of work in both October and December for bronchitis. Phinizy did not see a health care professional related to either of these 2005 bronchitis incidents, but, she was prescribed medication over the telephone because she was too sick to visit the doctor's office. While none of the medical records produced through discovery reveals a chronic bronchitis

---

Hott v. VDO Yazaki Corporation, 922 F.Supp. 1114, 1128 (rejecting sinobronchitis as a serious health condition and granting summary judgment to employer); Brannon v. OshKosh B'Gosh, Inc., 897 F.Supp. 1028, 1037 (M.D. Tenn. 1995) (absent proof that she was not incapacitated for more than three days, employee's gastroenteritis and upper respiratory infection were not serious health conditions even though employee saw doctor and was prescribed medication).

diagnosis from a physician, the Court of Appeals for the Third Circuit does not interpret 29 C.F.R. § 825.114(a)(2)(iii) to require a professional diagnosis of "chronic" as a prerequisite to a finding that one suffers from a serious chronic medical condition. Victorelli v. Shadyside Hospital, 128 F.3d 184, 188 (3ᵈ Cir.1997).[5]

These facts do not support a conclusion that Phinizy suffered a chronic serious medical condition under FMLA because her bouts with bronchitis did not necessitate "periodic visits for treatment."[6] Phinizy missed seven days of work for bronchitis in the two years covered by the complaint. She saw her physician one time in 2004 related to this condition and was prescribed medication once in December 2005 via the telephone because her illness prevented her from making an office visit. This extremely limited contact with health care professionals stands in stark contrast to cases from district courts in this Circuit where the evidence of periodic treatment was found sufficient to establish a chronic serious health condition. In Pinson v. Berkley Medical Resources, Inc., No. 03-1255, 2005 WL 3210950 (W.D.Pa. June 21, 2005), the

---

5   In Victorelli, the plaintiff's disease had been diagnosed as chronic, but the court of appeals did not state that such a finding was essential to qualifying a condition as chronic.

6   Under 29 C.F.R. § 825.114(e), absences attributable to a chronic serious health condition under § 825.114(a)(2)(iii) qualify for FMLA leave even if the employee does not receive treatment from a health care provider during the absence. This provision, however, does not abrogate the obligation to demonstrate that the employee indeed suffers from a chronic condition; it merely confirms that absences attributable to these conditions can be FMLA-qualifying even if professional treatment is not provided during the absence. Examples of situations covered by §825.114(e) include an asthmatic employee who cannot work because of an onset of an asthma attack or because his health care provider counseled the employee to stay home if the pollen count exceeds a certain level. Another example is if a pregnant employee misses work due to recurrent morning sickness. Id.

court determined that a rational factfinder could conclude that a plaintiff who visited a treating physician twice a week for treatment for a back and neck condition over one and one-half years suffered a chronic medical condition. In this case, the doctor testified that the plaintiff was subject to "flare-ups" that required further treatment. Id. at *16. In Schley v. Gloucester Refrigerated Warehouse, Inc., No. 05-3270 (RBK), 2007 WL 1237788, (D.N.J. April 26, 2007), a physician stated that he treated the plaintiff for a variety of medical conditions for a number of years and that he considered the plaintiff's conditions to be serious because they required continuing treatment over an extended period of time. Id. at *3. Finally, in Peter v. Lincoln Technical Institute, Inc. 255 F. Supp.2d 417, 440 (E.D.Pa. 2002), the court found that an employee's one month absence from work, under the orders of a doctor qualified as "any period of incapacity ... due to a chronic serious health condition under § 825.114(a)(iii)." Id. at *3. The employee's sleep apnea required periodic visits to a physician for treatment with a CPAT machine, straight oxygen and surgery. The court also considered that the plaintiff's condition continued over an extended period of time and that the apnea manifested itself in an episodic fashion. Id.

McCoy v. Port Liberte Condominium Association #1, Inc., No. Civ.A 2:02-1313, 2003 WL 23330682, (D.N.J. September 12, 2003), cited by Phinizy to support her position that she suffers from a chronic condition, does not compel a different result. In McCoy, the plaintiff argued, *inter alia,* that her bouts of abdominal pain constituted a chronic serious medical condition. The court concluded that the plaintiff could demonstrate that a material issue of fact existed as to whether she suffered a "period of incapacity" due to a chronic condition, citing McCoy's testimony that the pain put her "out of commission," including an episode when she

11

was hospitalized for two days, McCoy's trip to an emergency room, the prescription of medication, and the advice that she follow up her emergency room visit with a private doctor. Id. at *7. While the court did not directly confront the question of whether the plaintiff sought periodic visits for treatment, when addressing whether a physician's diagnosis was mandatory, it observed that a chronic serious medical problem finding requires that "the plaintiff have made multiple visits to her doctor." Id. at * 8. Thus, even the authority cited by Phinizy instructs that employees must have more than limited occasional contact with health care professionals to raise an issue of fact that they suffer from a FMLA-qualifying chronic condition. Accordingly, there is insufficient evidence from which a rational factfinder could find that Phinizy had a serious medical condition as defined by the statute. Rather, Phinizy suffered from a type of minor illness lasting for a few days, which Congress sought to exclude from FMLA coverage.

Because Phinizy also claims that Pharmacare interfered with her right to FMLA leave for the day she took her mother to the emergency room, she must demonstrate that her mother suffered from a serious medical condition. Neither party has specifically discussed this aspect of Phinizy's case, but the relevant facts reveal that on December 5, 2005, Phinizy found her ninety-six years old mother unresponsive. Phinizy accompanied her mother in an ambulance to a hospital emergency room. The elderly woman was admitted later that day for an infection and was hospitalized for three days.[7] Given these facts, a reasonable jury could conclude that

---

[7] Although Pharmacare does not dispute these facts for purposes for summary judgment, it contends that Phinizy's mother's medical records have not been properly authenticated and cannot ordinarily be considered in ruling on a summary judgment motion. Fed.R.Evid 901(a); Philbin v.Trans Union Corporation, 101 F.3d 957, 961, n.1 (3d Cir. 1996) (only evidence admissible at trial can be considered in ruling on summary judgment motion).

Phinizy's mother suffered a serious medical condition ostensibly qualifying Phinizy for FMLA leave to care for her parent

Phinizy must next demonstrate that she afforded Pharmacare adequate notice of her need for FMLA leave related to her mother's care. Employees are required to provide employers with thirty days notice when the necessity for FMLA leave is foreseeable. 29 U.S.C. § 2612(e)(1). Although the Act is not specific in the notice required for unforeseeable leave, the regulations inform that, in these instances, notice must be provided as soon "as is practicable." 29. C.F.R. § 825.303(a). The regulations also state that, when the need for leave is not foreseeable, it is sufficient for the employee to state only that leave is needed. Id. at § 825.303(b). The employee need not expressly assert rights under FMLA nor even mention FMLA by name. Id. at § 825.302(c); Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007).

It is undisputed that Phinizy never formally requested FMLA leave for the day she missed work to take her mother to the emergency room. The issue is whether the notice Phinizy did provide was legally sufficient to entitle her to FMLA benefits. "[T]he critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job." Sarnowski, 510 F.3d at 402 (quoting Brenneman v. MedCentral Health System, 366 F.3d 412, 421 (6th Cir. 2004)).

The undisputed facts show that Phinizy called into Pharmacare on December 6, 2005, and left a message with a security guard that she would not be at work because she had to take

her mother to the emergency room. When Phinizy returned to work the following day, she believed that she informed her shift supervisor why she had been absent the previous day, but did not recall any specifics of that conversation. In any event, Pharmacare's payroll department recorded Phinizy's absence as "Mother in ER-called and left message w/guard." Plaintiff's Appendix to Brief in Opposition to Motion for Summary Judgment, Exhibit 11 (Document # 36-4). Phinizy never discussed her mother's hospital stay with any Pharmacare Human Resource personnel.

Even under the liberal notice requirements of FMLA, these facts fall far short of meeting an employee's obligation to provide reasonably adequate information to apprise an employer of the need for FMLA leave to care for a family member with a serious health condition. All that the record demonstrates is that Phinizy took a day off to take her mother to the hospital. She provided no additional information to Pharmacare that would raise that specter that FMLA leave might be required. Nor can Phinizy cure this evidentiary deficiency because Pharmacare was made generally aware in 2001 that Phinizy was her mother's care giver when she made inquiry concerning FMLA leave to tend to her mother's needs. A request for information about FMLA leave four years prior to her mother's emergency room visit is too remote and generalized to alert Pharmacare that a FMLA-qualifying absence occurred on December 6, 2005.

Therefore, for the reasons that Phinizy cannot produce evidence that she was entitled to FMLA leave for her bronchitis and also did not provide adequate notice that her absence to care for her mother was FMLA-qualifying, it is recommended that summary judgment in favor of Pharmacare be granted on count one of Phinizy's complaint.

14

Retaliation Claim

Count two of Phinizy's complaint claims that she was terminated because she availed herself of FMLA-qualifying leave. A plaintiff proves a *prima facie* case of retaliation in this Circuit by showing that (1) she took an FMLA leave; (2) she suffered an adverse employment decision; and, (3) the adverse decision was causally related to her leave. Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).

To pursue this retaliation claim, Phinizy must contradict the premise of her allegation under count one that Pharmacare denied her benefits by refusing to designate her absences as FMLA-qualifying, and submit now that she was terminated because she took FMLA leave. No matter how parsed, however, Phinizy cannot clear the hurdle of proving that she took FMLA leave, actual or *de facto*.

In Reid-Falcone v. Luzerne County Community College, No. 3:CV-02-1818, 2005 WL 1527792, (M.D.Pa. June 28, 2005), a community college informed a faculty member that her maternity leave was covered by the school's private leave policy. The school never gave the plaintiff any information about available FMLA leave, and she instead took eight months of leave under the school's policy. When she returned to work, the plaintiff was given a job with different and reduced responsibilities. Under these facts, the court denied the college's summary judgment request on the FMLA interference claim, but judgment was granted on the retaliation claim. The court reasoned that because the plaintiff did not take FMLA leave, the school's action in reducing her responsibilities could not be in retaliation for her exercise of that right. Id. at *8. While Reid differs from the instant matter in that the plaintiff therein explicitly acknowledged that she understood her leave was not taken pursuant to FMLA, the holding

15

nonetheless underscores the need to prove that FMLA leave was taken to establish a *prima facie* retaliation claim.

Clearly Phinizy did not affirmatively request FMLA leave for the subject absences, though she was at least minimally aware of the right to same, having inquired about its availability on three prior occasions. Even accepting her factual representation that she did not understand that FMLA would cover her bronchitis absences,[8] and acknowledging Pharmacare's burden to grant FMLA leave if adequately apprised of an employee's need, as concluded above, Phinizy cannot demonstrate that she suffered the prerequisite chronic serious medical condition entitling her to FMLA leave or that Pharmacare erred in not designating her absences as such. Without this threshold showing, her retaliation claim cannot proceed.

The cases cited by Phinizy to support her position that she met her evidentiary burden in this regard do not advance her cause. In Strickland v. Water Works and Sewer Board of the City of Birmingham, 239 F.3d 1199 (11th Cir. 2001), the employer was granted summary judgment on a retaliation claim because the employee could not demonstrate the third element of a *prima facie* case that the employer had knowledge that the plaintiff engaged in FMLA-protected activity. While the court discussed the record evidence concerning the employer's notice that the plaintiff was invoking the protection of FMLA, there was no mention of a challenge to accepting the employee's diabetes as a FMLA-qualifying medical condition.

---

[8] Any claim by Phinizy that she did not understand that FMLA leave could be utilized for the day that she took her mother to the emergency room is belied by the undisputed fact that she previously inquired about its availability, specifically related to caring for her mother.

Brown v. DB Sales, Inc., No. Civ.A. 04-1512, 2005 WL 3591533 (E.D.Pa. December 29, 2005), is factually similar, but distinguishable in a critical way. In deciding whether Brown was retaliated against for absences related to caring for his mother, the court noted a factual issue as to whether Brown's time away from work should be designated as FMLA leave and assumed for purposes of summary judgment "that the leave . . . was FMLA qualifying." Id. At * 9. So too in Tamayo v. DeLoitte & Touche, LLP, Civ. No. 05-3364(WHW), 2007 WL 135975, *8 (D.N.J. January 16, 2007), the issue of whether an employee's leave was FMLA-qualifying was not disputed since the employer conceded that Tamayo met that element of her prima facie retaliation claim. None of these cases stands for a proposition that an employee can pursue a retaliation claim without establishing either that she made a formal request for FMLA leave or that she was entitled to FMLA leave in the first instance. Accordingly, Phinizy has failed to satisfy the initial requirement to establish a *prima facie* retaliation case under FMLA, and summary judgment is warranted in Pharmacare's favor on count two of her complaint.

For these reasons, it is recommended that Pharmacare's motion for summary judgment (Docket #19) be granted on both counts of Phinizy's complaint.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

*/s/ Amy Reynolds Hay*
United States Magistrate Judge

Dated: 11 February, 2008

cc: All counsel of record by Notice of Electronic Filing